IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Buckeye Check Cashing of
Arizona, Inc.,

      Plaintiff,

     v.                   Case No. 2:06-cv-792

Edgar Lang, et al.,

      Defendants.

<u>OPINION AND ORDER</u>

This is an action brought by plaintiff Buckeye Check Cashing of Arizona, Inc., an Ohio corporation, against defendants Edgar Lang, Daniel Flores and David Vejar, who are residents of the state of Arizona. The action was originally filed in the Court of Common Pleas of Franklin County, Ohio. Defendants then filed a notice of removal of the action to this court on the basis of diversity of citizenship. Plaintiff operates check cashing stores in Arizona, and the defendants are former employees who worked in plaintiff's stores in Maricopa County, Arizona. Plaintiff alleges that after leaving their employment with plaintiff, defendants obtained employment with Cash Advantage in stores located in Maricopa County. Plaintiff alleges that Cash Advantage is a competitor of plaintiff, and asserts claims under Ohio law against the defendants for breach of contract, based on a "NON-COMPETITION AND NON-DISCLOSURE AND NON-SOLICITATION AGREEMENT" ("the Agreement") signed by the defendants, and unjust competition.

This matter is before the court on defendants' motion to dismiss. Defendants have moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. Defendants have also moved to dismiss the unfair competition claim

pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim.  In the alternative, defendants have requested that this action be transferred pursuant to 28 U.S.C. §1404(a) to the United States District Court for the District of Arizona, Phoenix Division, and that this action be stayed pending the outcome of a declaratory judgment action filed by defendants in the Superior Court of Maricopa County, Arizona, prior to the commencement of the instant action.

I. Motion to Dismiss for Lack of Personal Jurisdiction

A. Procedure

In considering a motion to dismiss under Rule 12(b)(2), the court may determine the motion on the basis of affidavits alone. Serras v. First Tennessee Bank Nat. Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989).  In this case, the defendants have submitted affidavits in support of their motion.  When a court rules on a motion to dismiss pursuant to Rule 12(b)(2) without conducting an evidentiary hearing, it must consider the pleadings and affidavits in the light most favorable to the plaintiff.  See CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996).  In such a case, the plaintiff bears the burden of making a prima facie showing that in personam jurisdiction exists. Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1272 (6th Cir. 1998).  To establish a prima facie showing of personal jurisdiction, plaintiff must show that: 1) the defendant is amenable to suit under the forum state's long-arm statute; and 2) the due process requirements of the Constitution are met.  CompuServe, 89 F.3d at 1262.

B. Forum Selection Clause

1. Basis for Personal Jurisdiction

Plaintiff argues that this court has personal jurisdiction over the defendants due to the forum selection clause contained in the Agreement.  That clause states:

> Any action brought by either Employer or Employee concerning the subject matter of Employee's employment shall be instituted and maintained only in the state courts of Franklin County, Ohio.  Employee expressly consents to the exercise of that court's jurisdiction over him/her and waives any objections regarding personal jurisdiction and/or venue.

The requirement that a court have personal jurisdiction over a party is a waivable right.  Preferred Capital, Inc. v. Associates in Urology, 453 F.3d 718, 721 (6th Cir. 2006).  The use of a forum selection clause is one way in which contracting parties may agree in advance to submit to the jurisdiction of a particular court. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n. 14 (1985)(personal jurisdiction requirement may be waived through forum selection clause in contract); M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972)(where forum selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, their enforcement does not offend due process).  The Agreement in this case also contains a choice of law clause which states: "The validity, construction and enforcement of this Agreement shall be deemed governed by the laws of the State of Ohio."  However, the Sixth Circuit has noted that Ohio and federal law treat forum selection clauses similarly. Preferred Capital, 453 F.3d at 721.

2. Effect of Arizona Court Decision

Plaintiff argues that the issue of the validity of the clause

has been conclusively determined by the Superior Court of Maricopa County, Arizona.  Prior to the filing of the instant case, the defendants filed an action for declaratory judgment, styled as <u>Lang v. Buckeye Check Cashing of Arizona</u>, Case Number CV 2006-011624, in the Arizona court seeking a ruling that the Agreement is unenforceable.  On October 23, 2006, the judge in the Arizona case issued a brief order which stated: "The Court has had under advisement Defendant's Motion to Dismiss for Improper Venue.  The motion is granted."  Plaintiff's Memorandum Contra, Ex. 6.  The order further specified that the case was dismissed "without prejudice."

The res judicata effect of a state-court judgment in federal court is governed by the Full Faith and Credit Act, 28 U.S.C. §1738.  Federal courts must give to a state court judgment the same preclusive effect that would be given that judgment under the law of the state in which the judgment was rendered.  <u>Migra v. Warren City Sch.Dist. Bd. of Educ.</u>, 465 U.S. 75, 81 (1984); <u>Young v. Township of Green Oak</u>, 471 F.3d 674, 680 (6th Cir. 2006).

Under the doctrine of res judicata, a judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action.  <u>Gilbert v. Board of Med. Exam'rs</u>, 155 Ariz. 169, 174, 745 P.2d 617, 622 (App. 1987).  For issue preclusion to apply, the issue must have been actually litigated in a previous proceeding, the parties must have had a full and fair opportunity and motive to litigate the issue, a valid and final decision on the merits must have been entered, the resolution of the issue must be essential to the decision, and there must be common identity of the parties.  <u>Garcia v. General</u>

4

<u>Motors Corp.</u>, 195 Ariz. 510, 514, 990 P.2d 1069 (App. 2000).

Defendants argue that the decision of the Arizona court is not preclusive because they intend to appeal that decision. However, under Arizona law, a judgment is final for the purposes of applying res judicata even though it may be appealed. <u>Arizona Downs v. Superior Ct.</u>, 128 Ariz. 73, 76, 623 P.2d 1229 (1981); <u>Murphy v. Board of Med. Exam'rs</u>, 190 Ariz. 441, 449, 949 P.2d 530 (App. 1997).

Plaintiff relies on the decision in <u>Robert Schalkenbach Found. v. Lincoln Found., Inc.</u>, 208 Ariz. 176, 91 P.3d 1019 (App. 2004). In that case, the court held that a prior dismissal without prejudice under Ariz.R.Civ.P. 12(b)(6) due to lack of standing was a final judgment for purposes of issue preclusion, because the issue of standing must necessarily have been decided in ruling on the motion. <u>Id.</u>, 208 Ariz. at 181. In reaching that conclusion, the court cited the Ninth Circuit decision in <u>Offshore Sportswear, Inc. V. Vuarnet International, B.V.</u>, 114 F.3d 848, 850 (9th Cir. 1997), in which that court, applying federal law, held that the enforceability of the forum selection clause could not be relitigated even though the previous dismissal was without prejudice, where the issue which lead to the dismissal was adjudicated on its merits.

That is not the situation here. In the Arizona action brought by the defendants in this case, plaintiff filed a motion to dismiss for improper venue under Ariz.R.Civ.P. 12(b)(3). It is not apparent from the brief decision issued by the Arizona court that the court considered and rejected defendants' arguments as to why the forum selection clause should not be enforced. The resolution

of the issue on the merits was not essential to the decision.  The briefs informed the Arizona court that the plaintiff had filed an action involving the same matters in Ohio, and that the law of Ohio controlled the interpretation of the Agreement.  The Arizona court may have simply concluded that the Ohio action would be the best forum in which to litigate any defenses to the forum selection clause.  The decision does not indicate that any of the defendants' arguments against the enforcement of the forum selection clause were rejected on the merits.

This court further notes that a dismissal "without prejudice" usually has no res judicata effect under Arizona law.  See Adams v. Bear, 87 Ariz. 288, 293, 350 P.2d 751 (1960); Oldenburger v. Del E. Webb Development Co., 159 Ariz. 129, 133, 765 P.2d 531 (App. 1989).  Under Ariz.R.Civ.P. 41(b), a dismissal without prejudice for lack of jurisdiction, for improper venue, or for failure to join a party does not operate as an adjudication on the merits.  See Vance v. Vance, 124 Ariz. 1, 3-4, 601 P.2d 605 (1979)(res judicata did not apply to dismissal for failure to join a party in light of Rule 41(b)).  This court concludes that Arizona law does not require this court to give preclusive effect to the dismissal of defendants' Arizona action in considering whether to enforce the forum selection clause.

3. Language of Clause

Defendants argue that the forum selection clause does not apply to plaintiff's claims.  The defendants note that the clause refers to actions "concerning the subject matter of Employee's employment[.]" They argue that "Employee's employment" refers to defendants' employment at plaintiff's stores, and not their

subsequent employment by other employers which forms the basis for plaintiff's claims in this case.

Under Ohio law, common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument. <u>Foster Wheeler Envirespouse, Inc. v. Franklin County Convention Facilities Auth.</u>, 78 Ohio St.3d 353, 361, 678 N.E.2d 519 (1997). A writing executed as part of the same transaction will be read as a whole , and the intent of each part will be gathered from a consideration of the whole. <u>Id</u>.

In this case, the term "Employee's employment" is not specifically restricted to the employee's employment with the plaintiff. The term is broad enough to include employment with another employer. The first provision in the Agreement addresses plaintiff's right to terminate employment. The following provisions address matters which could arise after the termination of employment with the plaintiff, such as prohibiting the acceptance of employment with a competitor, the improper use of plaintiff's name, the disclosure of confidential information, and the solicitation of co-workers. Reading the Agreement as a whole, it is reasonable to conclude that the parties intended the forum selection clause in the Agreement to extend to litigation concerning alleged violations of those provisions, even if the employee was no longer employed by plaintiff.

<u>4. Enforcement of Clause</u>

Defendants argue that the forum selection clause should not be enforced in this case. A forum selection clause is generally valid

unless it is unreasonable. <u>Bremen</u>, 407 U.S. at 9-12. "[A] forum selection clause that is fairly bargained for and not the result of fraud will be enforced so long as to do so is reasonable at the time of litigation and does not deprive a litigant of his day in court." <u>United Std. Mgt. Corp. v. Mahoning Valley Solar Resources, Inc.</u>, 16 Ohio App.3d 476, 477-78, 476 N.E.2d 724 (1984).

The Ohio Supreme Court has held that, absent evidence of fraud or overreaching, a forum selection clause contained in a commercial contract between business entities is valid and enforceable, unless it can be clearly shown that enforcement of the clause could be unreasonable and unjust. <u>Kennecorp Mortgage Brokers, Inc. v. Country Club Convalescent Hospital, Inc.</u>, 66 Ohio St.3d 173, 176, 610 N.E.2d 987 (1993). <u>See also Security Watch, Inc. V. Sentinel Systems, Inc.</u>, 176 F.3d 369, 375 (6th Cir. 1999)(upholding forum selection clause in contract between two sophisticated business entities); <u>General Elec. Co. v. G. Siempelkamp GmbH & Co.</u>, 29 F.3d 1095, 1099 (6th Cir. 1994)(same). However, the contract in this case is an employment contract, not a contract between two sophisticated commercial entities. Therefore, the presumption of validity in <u>Kennecorp</u> does not apply, and other factors must be considered. <u>See Deaconess Homecare, Inc. v. Waters</u>, No. C-990277 (1st Dist. unreported), 1999 WL 1488974 at *1 (Ohio App. Dec. 8, 1999)(an employment contract is not a commercial contract requiring enforcement without looking at other factors).

A forum selection clause is presumptively valid, and will be enforced by the forum unless the party challenging the clause shows: (1) that the contract was the result of fraud or overreaching; (2) that enforcement would violate the strong public

policy of the forum state; and (3) that enforcement under the particular circumstances of the case would result in litigation in a jurisdiction so unreasonable, difficult and inconvenient that the challenger would for all practical purposes be deprived of his day in court. Barrett v. Picker Int'l, Inc., 68 Ohio App.3d 820, 824, 589 N.E.2d 1372 (1990).

In regard to the first factor, defendants argue that they signed the Agreement as a result of fraud and overreaching by plaintiff. To invalidate a forum selection clause based on fraud, it must be established that the fraud relates directly to the negotiation or agreement as to the forum selection clause itself, not the contract in general. Preferred Capital, Inc. v. Ferris Brothers, Inc., 167 Ohio App.3d 653, 657, 856 N.E.2d 984 (2005)(party opposing clause must show that fraud or misrepresentation induced him to agree to the inclusion of that clause in the contract). Here, defendants have produced no evidence that plaintiff made any false representations in inducing them to agree to the forum selection clause.

Overreaching is defined as the "act or an instance of taking unfair commercial advantage of another." United Rentals, Inc. v. Pruett, 296 F.Supp.2d 220, 227 (D.Conn. 2003)(quoting Black's Law Dictionary (7th Ed.1999)). A forum selection clause will not be invalidated simply due to the lack of sophistication of one of the parties. Ferris Brothers, 167 Ohio App.3d at 657. The unequal bargaining power of the parties or lack of ability to negotiate over the clause cannot, in itself, support a finding of overreaching. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593 (1991). However, overreaching may be found if the

9

disparity in bargaining power was used to take unfair advantage of the employee.  <u>Pruett</u>, 296 F.Supp.2d at 227.

Defendants have submitted affidavits in which they state that they were not informed that they would be required to sign the Agreement prior to beginning their employment.  They state that they were presented with the Agreement after they had resigned their former employment and started working for plaintiff. Defendant Vejar also states that he declined other offers of employment to accept employment with plaintiff.  The defendants further state that they were not permitted to negotiate or bargain for any revisions in the Agreement, and that they were presented with the Agreement on a take-it-or-leave-it basis.  The affidavits reveal that defendant Lang was hired as a store manager earning approximately $39,000 per year.  Defendant Flores worked as a customer service representative and store manager, earning an initial rate of $9.00 per hour.  Defendant Vejar earned between $8.50 and $9.50 per hour as a customer service representative.

Defendants rely on <u>Copelco Capital, Inc. v. St. Mark's Presbyterian Church</u>, No. 77633 (8th Dist. unreported), 2001 WL 106328 (Ohio App. Feb. 1, 2001).  In that case, the court declined to enforce a forum selection clause where the case involved a noncommercial agreement with an unsophisticated not-for-profit entity.

Some courts have upheld forum selection clauses in employment contracts.  <u>See</u> <u>Goodman v. Hill-Rom Co., Inc.</u>, 1996 WL 685840 (M.D.Fla. Nov. 25, 1996)(fact that employee was asked to sign agreement following merger did not invalidate clause; plaintiff was free to choose other employment); <u>Corinthian Media, Inc. v. Yelsey</u>,

1992 WL 47546 (S.D.N.Y. Mar. 5, 1992)(clause not invalid due to fact that defendants only signed agreements under threat of losing their jobs). In Behavioral Health Industry News, Inc. v. Lutz, 24 F.Supp.2d 401 (M.D.Pa. 1998), the court enforced a forum selection clause where the defendant had held high-level positions in the past, was able to negotiate the terms of the agreement and to take it home before signing it, and signed the agreement before beginning employment at a time when she still had the choice of whether to enter into the employment relationship.

However, other courts have declined to enforce a forum selection clause in employment contracts. In Dentsply Int'l, Inc. v. Benton, 965 F.Supp. 574 (M.D.Pa. 1997), the court refused to enforce the forum selection clause in an agreement which new management compelled an employee to sign in order to keep his job. The court concluded that the circumstances of the signing were sufficient to show overreaching. Id. at 579-80. The court noted that "the freedom to get another job does not alleviate the understandable pressure an employee would feel to preserve the job he already has. Thus, the employer-employee relationship is so inherently unequal that we believe that generally a forum selection clause in an employment agreement should not be enforced." Id. at 579. See also Jelcich v. Warner Brothers, Inc., No. 95 CIV. 10016(LLS) (unreported), 1996 WL 209973 (S.D.N.Y. April 30, 1996)(clause in an employment contract was not enforceable where plaintiff was required to sign the contract "as is" or receive no salary increases for four years); Nelson v. Master Lease Corp., 759 F.Supp. 1397, 1402 (D.Minn. 1991)(court refused to rely on clause in deciding defendant's motion to transfer because of the

"disparities in bargaining power" between employee and employer).

This court does not agree that a forum selection clause in an employment contract should never be enforced.  No one factor is determinative.  However, the court finds that the particular circumstances in this case, considered as a whole, are sufficient to constitute overreaching.  In arriving at this conclusion, the court notes that defendants were employed by plaintiff in modest-paying, lower-level jobs, not high-level corporate positions where the applicants could be expected to have a greater degree of bargaining power or sophisticated knowledge about contract terms. Defendants were not permitted to negotiate any of the terms of the Agreement.

Most importantly, they were not informed about or asked to sign the Agreement until after they had resigned their previous employment and started working for plaintiff.  Defendants gave up other employment in reliance on plaintiff's offer of employment, but were not timely advised by plaintiff of all the terms of that employment.  Plaintiff has offered no explanation as to why the defendants could not have been informed of the requirement of signing the Agreement at the time the offer of employment was made. While an employer may be entitled to the benefits of a forum selection clause even in cases involving unequal bargaining power, the plaintiff here took unfair advantage of defendants by waiting until they had already resigned their prior jobs and started working for plaintiff before informing them about the nonnegotiable Agreement which they were required to sign in order to keep their new employment.  See Preferred Capital, Inc. v. Sarasota Kennel Club, No. 1:04-cv-2063 (unreported), 2005 WL 1799900 (N.D.Ohio July

27, 2005)(holding a forum selection clause invalid for overreaching where clause was not timely disclosed to defendants).

The unusual fact which helps tip the balance in favor of the defendants is that plaintiff, although an Ohio corporation, has business locations exclusively in Arizona. Thus, there is no apparent rational reason for the forum selection clause other than to make it more difficult for employees to litigate issues relating to their employment. This, combined with the failure to tell the defendants that they would be required to agree to the forum selection clause before they resigned their prior employment, leads the court to conclude that plaintiff is guilty of overreaching, and that the forum selection clause should not be enforced.

In regard to the second factor, Ohio recognizes the validity of forum selection clauses, and enforcement of the clause would not violate the public policy of Ohio. This factor does not weigh in favor of nonenforcement.

As to the third factor, defendants have the burden of establishing that it would be unreasonable or unjust to enforce the forum selection clause. Ferris Brothers, 167 Ohio App.3d at 658. A finding of unreasonableness or injustice must be based on more than inconvenience to the party seeking to avoid the forum selection clauses' requirements. Id. Mere distance, mere expense, or mere hardship to an individual litigant is insufficient to invalidate a forum selection clause. Id. Rather, it must appear that enforcement of the clause would be "'manifestly and gravely inconvenient' to the party seeking to avoid enforcement such that it will 'effectively be deprived of a meaningful day in court[.]'" Info. Leasing Corp. v. Jaskot, 151 Ohio App.3d 546, 552, 784 N.E.2d

13

1192 (2003)(quoting Bremen, 407 U.S. at 19).

In determining whether the selected forum is sufficiently unreasonable, Ohio courts consider the following factors: (1) which law controls the contractual dispute; (2) the residency of the parties; (3) where the contract was executed; (4) where the witnesses and parties to the litigation are located; and (5) whether the forum clause's designated location is inconvenient to the parties. Barrett, 68 Ohio App.3d at 825. For example, in Waters, 1999 WL 1488974 at *1, the court declined to enforce a forum selection clause in an employment contract because Tennessee law controlled the dispute, the parties were Tennessee residents, the contract was executed in Tennessee, the witnesses were located in Tennessee, and Ohio was not a convenient forum. In Green v. Picker Corp., No. 38621 (8th Dist. unreported), 1979 WL 210070 at *2 (Ohio App. March 29, 1979), the court refused to enforce a forum selection clause designating New York as the forum. The court concluded that it was unreasonable to require plaintiff, a former employee of the defendant corporation, to bring the action in New York in light of the fact that the plaintiff had worked for the defendant in Ohio, plaintiff's financial resources were far less than those of the defendant, and the parties to the action were Ohio residents subject to the jurisdiction of Ohio courts.

In regard to the first factor, the Agreement includes a choice of law provision which states that the validity, construction and enforcement of the Agreement is governed by Ohio law. Assuming that this provision is valid and enforceable, plaintiff would receive the benefit of its choice of law even if the case is tried in Arizona, since the courts in Arizona would be capable of

14

applying Ohio law.  No argument has been made that Arizona law regarding the enforcement of non-competition clauses differs from Ohio law in any significant respect.  Therefore, this factor does not weigh heavily in favor of one jurisdiction over the other.

As to the second factor, the plaintiff is an Ohio corporation. However, all of plaintiff's stores are located in Arizona, and plaintiff does business only in Arizona.  The defendants are residents of Arizona.  As to the third factor, the Agreements in this case were signed and executed in Arizona.  As to the fourth factor, most, if not all, of the witnesses in this litigation are located in Arizona.

In regard to the fifth factor, since defendants live in Arizona, Ohio is not a convenient forum for them.  Furthermore, although Ohio is plaintiff's forum of choice, plaintiff has not shown how Ohio would be a more convenient forum for the plaintiff. Although plaintiff is an Ohio corporation, all of its stores are located in Arizona, and it conducts business exclusively in Arizona.  Most, if not all, of the witnesses and evidentiary materials relevant to the action are in Arizona, which is the location of plaintiff's stores and the Cash Advantage stores where defendants subsequently worked.  Thus, it appears that Ohio is not a convenient forum for litigating this action from plaintiff's perspective, either.

Weighing the above factors, this court finds that enforcing the forum selection clause in this case would result in litigation in a jurisdiction so unreasonable, difficult and inconvenient as to create a considerable risk that defendants would be deprived of their day in court.  The degree of distance between the two states

would contribute to a significant increase in the cost of litigating this action for all parties. The defendants were employees making a modest salary. They might have difficulty securing witnesses because of the increased cost of witness fees involved in litigating the action in Ohio. The defendants and any witnesses traveling to Ohio would be seriously inconvenienced by the need to obtain extended leave from jobs or to cover family obligations. Under the unusual factual situation in this case, the third prong of the Bremen test compels the finding that applying the forum selection clause to the defendants would be so unreasonable, difficult and inconvenient that the defendants would, for all practical purposes, be deprived of their day in court.

In light of the above analysis, the court finds that the forum selection clause should not be enforced in this case.

C. Personal Jurisdiction under Ohio Long-Arm Statute

The next issue is whether this court has personal jurisdiction over the defendants independent of the forum selection clause. For personal jurisdiction to exist, a defendant must have sufficient contacts with the forum state. International Shoe Co. v. Washington, 326 U.S. 310 (1945). In diversity cases, federal courts apply the law of the forum state to determine whether personal jurisdiction exists. Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000). The exercise of personal jurisdiction is valid only if it meets both the state long-arm statute, Ohio Rev. Code §2307.382, and constitutional due process requirements. Id.

Ohio Rev. Code §2307.382(A)(1) provides that a court may exercise personal jurisdiction over a person in a cause of action

16

arising from the person's transacting any business in Ohio.  A
court may also exercise personal jurisdiction in a cause of action
arising from the person's causing tortious injury in Ohio by an act
or omission outside Ohio if he regularly does or solicits business,
or engages in any other persistent course of conduct, or derives
substantial revenue from goods used or consumed or services
rendered in Ohio.  Ohio Rev. Code §2307.382(A)(3) and (4).
"Although the Ohio Supreme Court has ruled that the Ohio long-arm
statute does not extend to the constitutional limits of the Due
Process Clause, the central inquiry is whether minimum contacts are
satisfied so as not to offend 'traditional notions of fair play and
substantial justice.'" Rowlette, 228 F.3d at 721 (quoting Cole v.
Mileti, 133 F.3d 433, 436 (6th Cir. 1998)(citing Goldstein v.
Christiansen, 70 Ohio St.3d 232, 638 N.E.2d 541, 545 n. 1 (1994)).

    In Southern Machine Co. v. Mohasco Indus., Inc., 401 F.2d 374,
381 (6th Cir. 1968), the Sixth Circuit established a three-part test
for determining whether the exercise of personal jurisdiction is
within the bounds of due process:

> First, the defendant must purposefully avail himself of
> the privilege of acting in the forum state or causing a
> consequence in the forum state.  Second, the cause of
> action must arise from the defendant's activities there.
> Finally, the acts of the defendant or consequences caused
> by the defendant must have a substantial enough
> connection with the forum state to make the exercise of
> jurisdiction over the defendant reasonable.

Random, fortuitous or attenuated contacts with the forum state are
not sufficient.  LAK, Inc. v. Deer Creek Enterprises, 885 F.2d
1293, 1300 (6th Cir. 1989).  The defendant's relationship with the
forum state must not be merely collateral, but rather the kind of
substantial relationship that invokes, by design, the benefits and

protections of its laws.  Id.

The existence of a contract between the defendant and an Ohio citizen, standing alone, will not suffice to confer personal jurisdiction over a foreign defendant; rather, the parties' negotiations and contemplated future consequences, the terms of the contract, and the parties' actual course of dealing must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.  Burger King, 471 U.S. at 478-79.

In Rowlette, 228 F.3d at 722-23, the court held that the first prong of the Southern Machine test was not met where the contract at issue was for the performance of services by the defendant as a manufacturer's representative in other states, not in Ohio, and plaintiff failed to show that defendant had purposefully availed itself of the benefits and protections of the laws of Ohio.  The court further concluded that the second prong was not satisfied because the alleged breach did not occur in Ohio, noting that since defendant's connection with Ohio was not substantial as required by the third prong of the Southern Machine test, plaintiff was required to demonstrate that the facts at issue actually occurred in Ohio.  Id. at 724.  The court also found that the since the consequences of the breach were not substantially connected to Ohio, the consequences of defendant's acts did not have a substantial enough connection with Ohio to make the exercise of jurisdiction over the defendant reasonable.  Id.

The instant case arises from the alleged breach of the Agreement, which was signed by defendants in Arizona as a condition of their employment at plaintiff's stores in Arizona.  The

18

defendants did not transact any business in Ohio for purposes of establishing jurisdiction under §2307.382(A)(1). Defendants did not reach out to plaintiff in Ohio; rather, plaintiff employed defendants in Arizona for the purpose of providing services in plaintiff's stores in Arizona. Assuming arguendo that plaintiff's claim of unjust competition states a claim in tort, the alleged tortious conduct occurred in Arizona. Thus, §2307.382(A)(3) does not apply. There has been no showing that defendants regularly conducted or solicited business, engaged in any other persistent course of conduct, or derived substantial revenue from goods used or consumed or services rendered in Ohio, so as to establish personal jurisdiction under §2307.382(A)(4). Plaintiff has not made a prima facie showing of jurisdiction under the Ohio long-arm statute.

Plaintiff has also failed to make a prima facie showing that this court's exercise of personal jurisdiction over the defendants would satisfy the test of Southern Machine. As indicated above, the defendants signed the Agreement in Arizona, and worked for plaintiff in Arizona. Defendant Lang has never been in Ohio. Defendant Flores visited Ohio on one occasion to attend a management conference hosted by plaintiff. This visit was not for the purpose of creating "continuous and substantial" consequences in Ohio, but occurred on that one occasion simply because plaintiff is incorporated in Ohio and happened to hold the management conference there. See Rowlette, 228 F.3d at 723. This one contact falls within the category of "random" or "fortuitous." Defendant Vega has never been in Ohio.

No facts have been produced which are sufficient to establish

19

that the defendants purposefully availed themselves of the
privilege of acting in Ohio, or that the defendants sought the
benefits and protections of the laws of Ohio, or that they acted
with the intent of causing a consequence in Ohio. The "purposeful
availment" requirement demands that the defendants' conduct and
connection with Ohio are such that they "should reasonably
anticipate being haled into court there." Burger King, 471 U.S. at
474-75. Aside from the forum selection clause, which is not
enforceable, no evidence has been produced to indicate that this
requirement has been satisfied in this case.

As to the second prong, the basis for plaintiff's claims is
the defendants' alleged violation of the non-competition clause of
the Agreement by accepting employment with an alleged competitor in
Arizona. Those claims arise from the alleged acts of the
defendants in Arizona, not in Ohio.

To satisfy the third prong, plaintiff must show that the acts
of the defendants or consequences caused by the defendants had a
substantial enough connection with Ohio to make the exercise of
jurisdiction over them reasonable. To be reasonable, the exercise
of jurisdiction must "comport with 'traditional notions of fair
play and substantial justice.'" Reynolds v. International Amateur
Athletic Fed'n, 23 F.3d 1110, 1117 (6th Cir. 1994)(quoting Asahi
Metal Indus. co. v. Superior Court, 480 U.S. 102, 113 (1987)).
Factors to consider include the burden on the defendants, the
interest of the forum state, the plaintiff's interest in obtaining
relief, and the interest of other states in securing the most
efficient resolution of controversies. Compuserve, 89 F.3d at
1268.

Defendants had no connection with Ohio, and the burden of defending this action in Ohio would be considerable. In contrast, plaintiff's interest in obtaining relief may be achieved by filing an action in Arizona. Since plaintiff does business exclusively in Arizona, and since most, if not all, of the witnesses and evidence are located in Arizona, litigation in Arizona would not be unduly burdensome for the plaintiff.

Ohio may have an interest in providing plaintiff, an Ohio corporation, with a forum. However, Ohio's only connection to the matters at issue in the case is the fact that plaintiff is an Ohio corporation. Arizona has a far greater interest in the contract in question and whether it should be enforced. The Agreement was signed in Arizona. The acts of the defendants constituting the alleged breach of the Agreement occurred in Arizona. In fact, due to the geographical limitations of the non-competition clause, the defendants' actions could only constitute a violation of the Agreement if they occurred within five miles of one of plaintiff's business locations, which are exclusively in Arizona.

The non-competition clause was designed to protect plaintiff's stores in Arizona from competition resulting from the hiring of plaintiff's former employees by plaintiff's competitors in the Arizona market. Any consequences or damages resulting from such employment were incurred by plaintiff's stores in Arizona. Since defendants are citizens of Arizona, that state would also have a greater interest than Ohio in determining whether the non-competition clause is reasonable from the defendants' position.

Finally, Arizona has a more significant interest in securing the most efficient resolution of the controversy. Arizona which

has the greatest interest in the outcome of the dispute.  Arizona's economy is affected both by the need to protect plaintiff's businesses operating within its borders from competition by former employees, and by the impact which enforcement of the non-competition clause would have on the defendants and other Arizona businesses seeking to hire them.  Due to the location of witnesses and evidence, the litigation would progress more efficiently and economically in Arizona.

Plaintiff has failed to make a <u>prima facie</u> showing that the acts of the defendants or consequences caused by the defendants had a substantial enough connection with Ohio to make the exercise of jurisdiction over them reasonable.

This court concludes that plaintiff has failed to make a <u>prima facie</u> showing that this court has a basis for personal jurisdiction over defendants either under the Ohio long-arm statute or within the bounds of due process.

D. Conclusion

Since this court has found that the forum selection clause in this case should not be enforced, and since there is no other basis for personal jurisdiction in this case, this action must be dismissed for lack of personal jurisdiction over the defendants.

II. Motion for Transfer of Venue

Defendants have moved in the alternative for the transfer of this case to Arizona pursuant to 28 U.S.C. §1404(a).  In the Sixth Circuit, a court cannot consider a motion to transfer venue under §1404(a) unless the court has personal jurisdiction over the defendants.  <u>Pittock v. Otis Elevator Co.</u>, 8 F.3d 325 (6th Cir. 1993).  Since this court has determined that personal jurisdiction

22

is lacking here, this court cannot transfer the case, and this branch of defendants' motion is moot.  However, in the interests of judicial economy, the court will discuss what its ruling would have been on this branch of defendants' motion.

Under §1404(a), "[f]or the convenience of parties and witnesses in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a).  The first requirement for transfer is that the action "might have been brought" in Arizona. Since the defendants are residents of Arizona, this requirement is met.  The court must also consider whether a change of venue will facilitate the "convenience of the parties and witnesses" and serve "the interests of justice." D.C.Micro Development, Inc. v. Lange, 246 F.Supp.2d 705, 712-13 (W.D.Ky. 2003).

The presence of a forum selection clause is not determinative to this inquiry. Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 31 (1988); Kerobo v. Southwestern Clean Fuels Corp., 285 F.3d 531, 539 (6th Cir. 2002).  Although such a clause is a significant factor, it must be weighed against other considerations, taking into account the parties' expressed preference for that venue, the fairness of a transfer in light of such a clause, and the parties' relative bargaining power. Ricoh Corp., 487 U.S. at 29.

The court must also consider other factors, including: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the

practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice, including such concerns as systemic integrity and fairness. Moses v. Business Card Express, Inc., 929 F.2d 1131, 1137 (6th Cir. 1991); Kepler v. ITT Sheraton Corp., 860 F.Supp. 393, 398 (E.D.Mich. 1994).

The above factors weigh in favor of transferring this action to Arizona. Even if the forum selection clause is deemed to be valid, it's weight in the calculation would be diminished by the defendants' lack of bargaining power. See Nelson v. Master Lease Corp., 759 F.Supp. 1397, 1402 (D.Minn. 1991)(forum selection clause not given substantial weight because of undue bargaining power possessed by defendant, where plaintiff terminated her previous position and was given boilerplate contract to sign after starting new position). In light of the fact that defendants reside in Arizona and all of plaintiff's businesses are located in Arizona, that state is a convenient forum for the parties. Most, if not all, of the witnesses in this case would be located in Arizona, since the employment contracts were signed in Arizona, and all of the acts constituting the alleged breaches of the Agreement occurred in Arizona. The district court in Arizona would have the ability to compel the attendance of witnesses, and the cost of obtaining witnesses and other evidence for a trial in Arizona would be substantially less that the cost of proceeding with the litigation in Ohio. The state of Arizona has a substantial connection to the alleged events in this case. Therefore, even if this court had personal jurisdiction over the defendants, the court would grant defendants' motion to transfer the case to Arizona.

<u>III. Motions to Dismiss Unjust Competition Claim and to Stay</u>

Defendants have also moved to dismiss plaintiff's claim of unfair competition and to stay this action pending the outcome of the case in Arizona.  In light of the court's ruling that personal jurisdiction is not present in this case, the court will not rule on these branches of defendants' motion to dismiss.

<u>IV. Conclusion</u>

In accordance with the foregoing, defendants' motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction is granted, and this action is dismissed without prejudice.


Date: February 23, 2007          <u>      s\James L. Graham      </u>
                                 James L. Graham
                                 United States District Judge